FILED

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

2010 SEP 10 P 2: 17

CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

| | | |
|---|---|---|
| **GREAT POINT PARTNERS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:10cv 1019 |
| | ) | Jcc/JFA |
| **JOHN ELLIOTT,** | ) | |
| | ) | |
| SERVE: | ) | |
| John Elliott | ) | |
| 366 Natty Point Lane | ) | |
| Kilmarnock, VA 22432 | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Great Point Partners, LLC, by and through its attorneys, LeClairRyan and Morrison Cohen LLP, as and for its complaint against the Defendant John Elliott, allege as follows:

## INTRODUCTION

1.      This is a claim for breach of contract and specific performance arising from a breach of a stock purchase agreement between Defendant John Elliott and Plaintiff Great Point Partners, LLC.

2.      On or about July 15, 2010, Defendant John Elliott entered into a written agreement to sell to Great Point Partners, LLC more than one million shares of Mediatech, Inc., including all the shares that he owned.  That agreement also required Defendant to call a special meeting of the shareholders of Mediatech, Inc. and to vote his shares as directed by Great Point Partners.  On August 31, 2010, Defendant suddenly repudiated his contract with Great Point Partners and refused to sell his shares or abide by the terms of the agreement.  As a result of the

Defendant's repudiation, Plaintiff is threatened with irreparable harm, and has also suffered and will continue to suffer substantial damages, all as set forth more fully below.

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiff Great Point Partners, LLC ("Great Point") is a Delaware limited liability company with its principal place of business in Greenwich, Connecticut.

4.      Defendant John Elliott is a natural person and, upon information and belief, a citizen and resident of the state of Virginia, with a permanent address in Kilmarnock, Virginia.

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, because the parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391(a)(1) and (2), as Defendant is a resident of this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.      **General Background**

7.      Great Point is an investment firm, focusing primarily upon investments in healthcare-related companies.

8.      In the fall of 2009, Great Point began to explore making a significant investment in a company known as Mediatech, Inc. ("Mediatech").

9.      Mediatech is a privately-held company based in Manassas, Virginia, that manufactures and supplies cell culture and molecular biology reagents to biopharmaceutical, academic and government research facilities.

**B.     Great Point Agrees to Purchase Elliott's Shares in Mediatech**

10.     Upon information and belief, John Elliott was one of the co-founders of Mediatech and an executive and director of Mediatech for over 20 years. Mr. Elliott is, and was at all relevant times, intimately familiar with Mediatech's business and operations.

11.     Upon information and belief, John Elliott was also one of the initial investors in Mediatech and (as Mr. Elliott specifically represented to Great Point) personally owns 1,053,437.5 shares of the common stock of Mediatech. Defendant's wife, Laura Elliott, owns 10,000 shares of the common stock of Mediatech.

12.     In addition, upon information and belief, Defendant controls 91,146.50 shares owned by Robert Taschner ("the Taschner Shares") and had at all relevant times the ability to acquire the same.

13.     In or about mid-June 2010, representatives of Great Point met with Defendant John Elliott, his wife Laura Elliott, and a family advisor of the Elliotts, and explained that Great Point intended to acquire a controlling interest in Mediatech. In order to do so, Great Point wished to acquire their shares, including the Taschner Shares (the Mediatech shares owned by the Elliotts together with the Taschner Shares are collectively referred to as "the Shares").

14.     Upon information and belief, the Shares represented approximately 37% of the issued and outstanding shares of the common stock of Mediatech. Great Point also intended to purchase shares of Mediatech common stock owned by other shareholders of Mediatech.

15.     Great Point offered to purchase the Shares for $4 per share, and also cause Mediatech to (i) continue to pay $100,000 per year towards Defendant's life insurance

3

premiums, (ii) continue to pay for Defendant's health care benefits, and (iii) obtain a release of Defendant's $5,000,000 personal guarantee to one of Mediatech's lenders.

16.     Given his long history and position with Mediatech, Defendant was of course uniquely qualified to assess the fairness of Great Point's offer. Indeed, given his status at Mediatech, including his position as one of the largest shareholders of Mediatech, he also had the advantage of access to its management and to its books and records.

17.     Defendant ultimately accepted Great Point's offer and agreed to sell Great Point the Shares.

**C.     The Stock Purchase Agreement**

18.     On July 15, 2010, Great Point entered into a stock purchase agreement with Defendant John Elliott and his wife, Laura Elliott (the "Stock Purchase Agreement").

19.     Pursuant to the Stock Purchase Agreement, the Elliotts agreed to sell the Shares to Great Point at a price of $4 per share in accordance with its terms and conditions. The Shares to be sold included 1,053,437.5 shares of the common stock in Mediatech owned by Defendant, 10,000 shares owned by his wife, Laura Elliott, as well as the Taschner Shares, i.e., 91,146.5 additional shares. All told, the Elliotts committed to sell 1,154,584 shares of Mediatech common stock for an aggregate sale price of $4,618,336, subject to the terms and conditions set forth in the Stock Purchase Agreement.

20.     Defendant understood at all relevant times that Plaintiff's purchase of the Shares was part of a plan to acquire and control the voting rights of a majority of all outstanding Mediatech common stock.

21.     The Stock Purchase Agreement also required Defendant to demand that Mediatech call a special meeting of shareholders and to vote the Shares as directed by Great

Point, so that Great Point could replace the current board of directors and facilitate its goal of acquiring a controlling interest in Mediatech.

      22.     The Stock Purchase Agreement prohibited the Elliotts from engaging in discussion with any other potential purchasers of the Shares, and required the Elliotts to take all actions reasonably requested by Great Point.

      23.     In reliance upon the Elliotts' execution of the Stock Purchase Agreement, Great Point expended substantial resources to acquire Mediatech stock from other Mediatech shareholders, and in fact successfully entered into a stock purchase agreement with other Mediatech shareholders so that Great Point would in fact have a controlling interest in Mediatech. In this connection, Great Point expended substantial sums on legal, consulting, travel and other related expenses.

## D.     The Elliotts Repudiate the Stock Purchase Agreement

      24.     Since the execution of the Stock Purchase Agreement on July 15, 2010, Great Point has at all times abided by its terms and conditions and performed its obligations thereunder.

      25.     On or about August, 2010, Great Point requested that the Elliotts call a special meeting of the shareholders of Mediatech. Under Virginia law, the Elliotts were the only shareholders with a sufficient quantity of shares to call such a special meeting (other than the CEO of Mediatech, James DeOlden, who declined to deal with Great Point).

      26.     In the days after Great Point requested that the Elliotts call a special meeting of the shareholders, the Elliotts suddenly stopped communicating with Great Point.

      27.     On August 31, 2010, after numerous efforts by Great Point to contact the Elliotts failed, Great Point received a letter from an attorney representing the Elliotts, which

repudiated any obligation under the Stock Purchase Agreement and indicated that the Elliotts would not sell their Shares to Great Point.[1]

28.     To date, the Elliotts have declined to abide by their contractual obligations.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Specific Performance)

29.     Each of foregoing paragraphs is repeated and realleged as if set forth fully and incorporated herein.

30.     Great Point and Defendant are parties to a valid and enforceable Stock Purchase Agreement.

31.     Great Point has performed all obligations due under the Stock Purchase Agreement or has been excused from performing its obligations as a result of the Elliotts' breach.

32.     Defendant's refusal to call a special meeting of the shareholders of Mediatech at the direction of Great Point constitutes a material breach of the Stock Purchase Agreement.

33.     Defendant's repudiation of his obligation to sell the Shares to Great Point also constitutes a material breach of the Stock Purchase Agreement.

34.     But for Defendant's breach of his obligations under the Stock Purchase Agreement, Great Point would be ready, willing and able to acquire the Shares and ultimately obtain a controlling interest in Mediatech.

35.     Indeed, Great Point remains ready, willing and able to perform all of its obligations under the Stock Purchase Agreement.

---

[1] The August 31, 2010 letter was denominated for some reason as an "inadmissible settlement communication," and its contents will not be fully disclosed here. The letter is referred to, however, not for the truth of any statement therein, but merely for its notice to Great Point.

6

36.     The Shares are valuable and unique property that cannot be acquired from other sources.

37.     Defendant's repudiation of the Stock Purchase Agreement threatens irreparable damage to Great Point by depriving it of the ability to acquire a controlling interest in Mediatech.

38.     Upon information and belief, Defendant continues to own or control the Shares and remains able to convey this property to Great Point if so ordered by this Court.

39.     Great Point has no adequate remedy at law as monetary damages alone are inadequate. Barring specific performance, Great Point cannot be made whole by an award of monetary damages alone.

40.     By reason of the foregoing, Great Point is entitled to specific performance by Defendant of his obligations under the Stock Purchase Agreement, including but not limited to the calling of a special meeting of the shareholders, the voting of the Shares as directed by Great Point, and the transfer of the Shares to Great Point in exchange for $4,618,336, all pursuant to the terms and conditions of the Stock Purchase Agreement. In addition, Great Point is entitled to an extension of the expiration of the Stock Purchase Agreement for an amount of time equal to the delay caused by Defendant's refusal to perform his obligations under the Stock Purchase Agreement.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

41.     Each of foregoing paragraphs is repeated and realleged as if set forth fully and incorporated herein.

42.     In reliance upon the Defendant's execution of the Stock Purchase Agreement, Great Point expended substantial resources to acquire Mediatech stock from other

7

Mediatech shareholders, and otherwise expended substantial sums on legal, consulting, travel and other expenses.

43.    But for the Defendant's breach of his obligations under the Stock Purchase Agreement, Great Point would have acquired a valuable controlling interest in Mediatech and also realized a substantial and commercially-reasonable profit on its investment.

44.    As a result of the Defendant's breaches of the Stock Purchase Agreement, Great Point will be unable to acquire a controlling interest in Mediatech, and its substantial investment of time, money and resources will be lost.

45.    As a direct result of Defendant's breach of contract, Great Point has been damaged in an amount to be determined at trial, but in all events in excess of $1 million.

WHEREFORE, Plaintiff Great Point respectfully requests that the Court enter an order:

(1)    directing Defendant to specifically perform his obligations under the Stock Purchase Agreement, and extending any expiration of the Stock Purchase Agreement for a period of time equal to the delay caused by Defendant's refusal to perform, and

(2)    awarding Plaintiff damages against Defendant in an amount to be determined at trial, but in all events in excess of $1,000,000, and

(3)    granting such other and further relief as the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**GREAT POINT PARTNERS, LLC**

By: _____

Charles M. Sims (VSB No. 35845)
LeClairRyan, A Professional Corporation

8

Riverfront Plaza, East Tower
951 East Byrd Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 783-2003
Facsimile: (804)783.2294
Charles.Sims@leclairryan.com

Joanna L. Faust (VSB No. 72930)
LeCLAIRRYAN, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA  22314
Telephone: (703) 684-8007
Facsimile:  (703) 647-5983
Joanna.Faust@leclairryan.com
*Counsel for Plaintiff Great Point Partners, LLC*

*Of Counsel*:

DONALD H. CHASE
Morrison Cohen LLP
909 Third Avenue
New York, New York 10022
Phone:   (212) 735-8684
Fax: (212) 735-8708

9