IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN ELLIOTT and LAURA ELLIOTT, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GREAT POINT PARTNERS, LLC ) <br> ) <br> Defendant. ) | Civil Action No. 1:10-cv-1019 |

JOHN AND LAURA ELLIOTT'S MEMORANDUM OF LAW
IN OPPOSITION TO GREAT POINT PARTNERS, LLC'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST JOHN ELLIOTT ON THE ISSUE OF LIABILITY FOR BREACH OF
CONTRACT

COMES NOW John and Laura Elliott ("Elliotts") by counsel, and pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, respectfully submits this Memorandum of Law in Opposition to Great Point Partners, LLC ("Great Point") Motion for Partial Summary Judgment.

**PRELIMINARY STATEMENT AND STATEMENT OF FACTS CREATING GENUINE ISSUES TO BE LITIGATED**

This action is based upon an action for breach of contract and an action seeking rescission of a written contract to sell individually owned stock in a privately held Virginia corporation, Mediatech, Inc., ("Mediatech") to the Connecticut investment company Great Point Partners, LLC ("Great Point"). The requested rescission was based upon the Elliotts dealings with Great Point prior to and during the entry of the contract to sell to Great Point 1,154,584 shares of common stock in Mediatech. On June 30, 2010, two managing directors of Great Point flew from Connecticut to the Elliotts' home in Kilmarnock, Virginia and made a presentation to the Elliotts both verbally and in writing in an effort to convince the Elliotts to sell their common shares in Mediatech to Great Point. The Elliotts alleged that Great Point through its managing directors Adam B. Dolder and David E. Kroin made several verbal and written representations to the

Elliotts which Great Point knew to be false at the time they were made and which were intended to induce the Elliotts to enter into a written contract to sell their stock at four dollars ($4.00) per share. The Elliotts allege these statements were made in an attempt to induce the Elliotts to sell their shares at a considerably reduce price and these statements were made by Great Point through it managing directors even though at the time they knew these statements to be false.

John Elliott was an original co-founder of Mediatech and one of its largest shareholders. Great Point approached John Elliott knowing he was still listed as a director and executive vice president but had not had an active role in the company for several years. Great Point made materially false statements related to the financial stability of Mediatech which they knew to be false in an effort to convince the Elliotts to sell their shares at a reduced price and under the guise of saving Mediatech by infusing capital into the failing company.

### A. Procedural History of this Action

The Elliotts filed suit in the Circuit Court of Loudoun County on September 1, 2010. This suit is the basis of the current action, following its removal to this Court. The Loudoun County Circuit Court action was filed but not served as the parties were communicating and attempting to resolve this matter. The Defendant filed its Complaint seeking breach of contract on September 10, 2010, and filed for removal on September 15, 2010.

On October 26, 2010, Great Point filed a Motion to Dismiss under Federal Rules 12(b)(6) and 9(b). On December 3, 2010, Great Point filed a Motion for Partial Summary Judgment under Federal Rule 56(a).

### B. Great Point Begins the Process to Invest in and Purchase Shares of Mediatech

Beginning on or before March 18, 2010 Great Point approaches Mediatech and its principal share holders and begins discussions in an attempt to invest in Mediatech and purchase common stock from limited shareholders in Mediatech. Upon information and belief at all times John Elliott received written communications regarding the aforementioned transactions. On or about April 14, 2010, Great point sent a letter of intent to John Elliott and James DeOlden, both original founders of Mediatech, outlining their proposal to invest in Mediatech and to buy common stock from its larger shareholders. On April 15, 2010, all parties executed the letter of intent. Per the letter of intent Mr. Elliott would have received an implied price per share of Ten Dollars ($10.00) and a cash payment of Nine Million Dollars ($9,000,000.00) at closing.

On or about June 28, 2010, the Elliotts received a letter from Great Point indicating that the company was tight on liquidity, in violation of covenants with the potential that Branch Banking and Trust, Inc. ("BB&T") was going to potentially force a sale of the Mediatech forcing the company into bankruptcy and calling the personal guarantees made by the company principals. This letter along with the presentation at the Elliotts' home and subsequent statements made by Great Point were provided in an attempt to show that Mediatech was in a dire financial situation and that Great Points investment of capital was necessary to keep Mediatech viable and to prevent the company from foreclosure and forcing the company into bankruptcy. Said letter also included proposals to purchase the stock at Four Dollars ($4.00) per share or Six Dollars per share ($6.00).

On June 29, 2010, John Elliott contacted Great Point to discuss the letter of June 25, 2010. Twenty-four hours after receiving John Elliott's phone call on, June 30, 2010, Mr. Kroin and Mr. Dolder arrive at the Elliotts home and presented their proposal to purchase the Elliotts common stock. As outlined in Paragraph 9 of the Elliotts' Complaint Great Point indicated in

3

writing that: a. Mediatech has experienced no EBITA growth in 2010; b. Mediatech is fully drawn on its credit facilities; c. Mediatech's BB&T revolving line of credit is due in full and BB&T is prepared to foreclose; and d. Mediatech's payables have been stretched beyond reasonable limits.

During the course of this presentation and during the course of Great Point's attempt to invest in Mediatech and purchase shares in Mediatech, Great Point repeatedly stated that they had spent approximately One Million Dollars ($1,000,000.00) in their due diligence investigation of Mediatech's valuation and the valuation of Mediatech common stock. Great Point's presentation as in the letter of June 25, 2010, made statements that led the Elliotts to believe that Mediatech was on the verge of foreclosure and potential bankruptcy and that the ultimate outcome included their friends and former employees at Mediatech losing their jobs.

As the result of the presentation and the alleged fraudulent statements the Elliotts executed a stock purchase agreement on July, 15, 2010, to sell their aggregate common stock of Mediatech. The stock purchase agreement provided that the Elliotts would sell their aggregate shares of Mediatech common stock in the amount of 1,164,584 for Four Dollars ($4.00) per share for a total dollar amount of Four Million Six Hundred Eighteen Thousand Three Hundred and Thirty Six Dollars ($4,618,336).

## STANDARD OF REVIEW AND ARGUMENT

The current motion filed by Great Point for Partial Summary Judgment was filed pursuant to Federal Rule of Procedure 56(a). Great Points previously filed Motion to Dismiss under Federal Rule of Procedure 12(b)(6) included significant documentation that brought into question "matters outside the pleadings" and pursuant to Federal Rule of Civil Procedure 12(d) the original Motion to Dismiss must be treated as a Summary Judgment Motion under Federal Rule of Civil Procedure 56. Under Federal Rule of Civil

Procedure 56(c)"a party shall not file separate motions for summary judgment addressing separate grounds for summary judgment."

### Conclusion

In accordance with the aforementioned claims, Great Point's Motion for Summary Judgment should be denied and this matter should proceed to trial. Alternatively, the Elliotts would request that the court grant them leave to amend their Answer under the Federal Rules of Civil Procedure Rule 15(a)(2) as there was sufficient notice to Great Point of the Elliott's affirmative defenses by virtue of the Elliott's suit against Great Point and that justice would require that the Elliott's be permitted to amend their answer to include these appropriate affirmative defenses.

Respectively Submitted

John and Laura Elliott

By: _____/s/_____

Michael J. Seck (VSB No. 47390
The Law Office of Michael J. Seck, PLC
199 Liberty Street, SW
Leesburg, Virginia 20175
(703) 777-2881
(703) 777-911 *facsimile*
mseck@yahoo.com
Counsel for the Plaintiffs John and Laura Elliott

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of December, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and mailed a true and accurate copy to:

Donald H. Chase
MorrisonCohen, LLP
909 Third Avenue
New York, New York 10022
*Counsel for Plaintiff*

Charles Michael Sims (VSB No. 35845)

LeClairRyan, A professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Suite 800
Richmond, Virginia 23219
*Counsel for Plaintiff*

Joanna Lee Faust (VSB No. 72930)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
*Counsel for Plaintiff*

_____/s/_____
Michael J. Seck (VSB 47390)
The Law Office of Michael J. Seck, PLC
199 Liberty Street, SW
Leesburg, Virginia 20175
(703) 777-2881
(703) 777-9113 *facsimile*
secklaw@yahoo.com
Counsel for Plaintiffs John and Laura Elliott