IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| JOHN ELLIOTT and<br>LAURA ELLIOTT,<br><br>Plaintiffs,<br><br>v.<br><br>GREAT POINT PARTNERS, LLC,<br><br>Defendant. | ) | 1:10cv1019 (JCC/JFA)<br>1:10cv1047 (JCC/JFA) |

**<u>M E M O R A N D U M   O P I N I O N</u>**

This matter is before the Court on defendant Great Point Partners, LLC's Motion to Dismiss [Dkt. 7] plaintiffs John and Laura Elliott's Complaint [1:10cv1047 Dkt. 1-4] for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to plead with particularity pursuant to Rule 9(b). For the following reasons, the Court will deny Defendant's Motion to Dismiss.

## I. Background

This matter arises out of a July 15, 2010 stock purchase agreement (the "Agreement") entered into by and between plaintiffs John and Laura Elliott ("Plaintiffs" or the "Elliotts") and defendant Great Point Partners, LLC ("Defendant" or "Great Point"), pursuant to which Plaintiffs agreed to sell their shares in Mediatech, Inc. ("Mediatech"), to Defendant for

allegedly less than their true value. (Compl. ¶ 12.) According to Plaintiffs' Complaint, Defendant made certain misrepresentations to fraudulently induce Plaintiffs to enter into the Agreement. (Compl. ¶ 12.)

A. Background

Plaintiffs John and Laura Elliott, husband and wife, own 1,063,437.50 shares of the common stock of Mediatech, a Virginia-based biotechnology company. (Compl. ¶ 19; D. Ex. [1] [2] 1.) Mediatech, according to its annual reports filed with the Virginia State Corporation Commission, had 3,846,154.00 authorized shares of common stock. (D. Ex. 2.) Thus, assuming that all of Mediatech's authorized shares of common stock are issued and outstanding, Plaintiffs owned 27.65 percent of Meditech's shares. Mr. Elliot served as an officer and director of Mediatech from its inception in 1995 until sometime in 2009. (D. Ex. 2.) Mr. Elliot also executed a $5,000,000.00 personal guarantee in favor of Mediatech's primary creditor, BB&T. (D. Ex. 1.)

[1] The Court may consider authentic documents which are integral to Plaintiffs' claim. *See Clark v. BASF Corp.*, 142 F. App'x. 659, 661 (4th Cir. 2005) ("When the plaintiff fails to introduce a pertinent document as part of her pleading, a significant number of cases from throughout the federal court system make it clear that the defendant may introduce the document as an exhibit to a [motion to dismiss]; that certainly will be true if the plaintiff has referred to the item in the complaint and it is central to the affirmative case.") (quoting 5A Wright & Miller, Federal Practice and Procedure § 1327 (3d ed. 2004)). The Court may also consider official public records pertinent to the plaintiffs' claims, so long as their authenticity is unquestioned. *See Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (holding that official public records may also be considered as long as they are of unquestioned authenticity).

[2] Defendant's exhibits will be referred to as "D. Ex. []."

Defendant approached Plaintiffs in mid-2010 with a proposal to purchase Plaintiffs' shares of Mediatech for $4.00 per share and for arranging the release of Mr. Elliott's $5,000,000.00 personal guarantee in favor of BB&T. (Compl. ¶¶ 6, 19; D. Ex. 1.) On June 30, 2010, two representatives of Defendant made an oral and written presentation (the "Presentation") to Mr. Elliott in support of Defendant's stock purchase proposal. (Compl. ¶¶ 7, 10.) The contents of the Presentation were based on Defendant's extensive due diligence. *Id*.

According to Plaintiffs' Complaint, the Presentation contained the following false representations:

- Mediatech has experienced no EBIDTA [earnings before interest, depreciation, taxes, and amortization] growth in 2010;
- Mediatech is fully drawn on its credit facilities;
- Mediatech's BB&T revolving line of credit is due in full and BB&T is prepared to foreclose; and
- Mediatech's payables have been stretched beyond reasonable limits.

(Compl. ¶ 9.) According to Plaintiffs, these representations are provably false, and Defendant knew them to be false when they were presented to Mr. Elliott. (Compl. ¶¶ 10-11.) Defendants allegedly made these statements with intent to induce Plaintiffs to enter into the Agreement. (Compl. ¶ 16.)

In reliance on these statements, Plaintiffs executed the Agreement on July 15, 2010. (Compl. ¶ 12.) Pursuant to the Agreement, Plaintiffs agreed, among others things, to sell their

1,063,437.50 Mediatech shares to Defendant at a price of $4.00 per share. (Compl. ¶ 19.) In addition to Plaintiffs' block of shares, the Elliotts represented to Defendant that as of the closing of the transaction, they would own an additional 91,146.50 shares acquired from one Robert Taschner (the "Taschner Shares"), resulting in a block of 1,154,584 shares to be sold to Defendant at $4.00 per share, for an aggregate purchase price of $4,618,336.00, of which $4,253,750.00 was attributable to Plaintiffs' block of shares excluding the Taschner Shares. (Compl. ¶ 19; D. Ex. 1.) Plaintiffs allege that the "actual value per share" was $10.00 per share, and seek compensatory damages in the amount of $6,380,625.00, the difference between the agreed-to and alleged actual share values attributable to Plaintiffs' block of shares excluding the Taschner Shares. (Compl. at p. 3.)

Plaintiffs seek $6,380,625.00 in compensatory damages as described above, or, in the alternative, rescission and cancellation of the Agreement. (Compl. at p. 3.) In addition, Plaintiffs seek $19,141,875.00 in punitive damages. (Compl. at p. 4.)

B. Procedural Background

On or about September 1, 2010, Plaintiffs filed a one-count complaint (the "Complaint") in the Circuit Court of Loudon County, Virginia, alleging fraudulent inducement to contract,

*John Elliot and Laura Elliott v. Great Point Partners, LLC*, Case No. CL 63454. [1:10cv1047, Dkt. 1-4.] On September 20, 2010, Defendant removed that case to this Court, and the matter was given civil docket number 1:10cv1047. [1:10cv1047, Dkt. 1.]

On September 10, 2010, Great Point filed as plaintiff a two-count complaint against the Elliotts, as defendants, for specific performance and breach of contract, and the matter was given civil docket number 1:10cv1019. [1:10cv1019, Dkt. 1.] On October 26, 2010, this Court consolidated these two cases under the instant matter, civil docket number 1:10cv1019. [Dkt. 6.]

On October 26, 2010, Defendant filed a Motion to Dismiss Plaintiff's Complaint.[3] [Dkt. 7.] Oral argument was scheduled before this Court for November 19, 2010. Plaintiffs failed to timely respond to Defendant's Motion to Dismiss, but counsel appeared at oral argument. In its November 19, 2010 Order [Dkt. 15], this Court directed Plaintiffs to file a response in opposition to Defendant's Motion to Dismiss.

On November 23, 2010, Plaintiffs filed their Opposition to Defendant's Motion to Dismiss (the "Opposition"). [Dkt. 16.] Defendant filed a Reply in Further Support of its Motion to Dismiss (the "Reply") on December 6, 2010. [Dkt. 23.] Defendant's Motion to Dismiss is currently before the Court.

## II. Standard of Review

3 Defendant's Memorandum in Support [Dkt. 8] of its Motion to Dismiss will be

referred to as “D. Mem.”

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* at 1965. In its recent decision, *Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) analysis. First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that

amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. In other words, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Federal Rule of Civil Procedure 9(b), however, imposes a heightened pleading standard for fraud claims. "In alleging fraud [], a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy the heightened pleading standard of Rule 9(b), a plaintiff must state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

## III. Analysis

Defendant asserts that Plaintiffs' fraud claim fails because Plaintiffs cannot plead the elements necessary to state a claim for fraud, and because Plaintiffs have not pled with the particularity required of a fraud claim.[4] The Court will address each argument in turn.

A. Fraud Pleading Under 9(b)

As an initial matter, and apart from whether they have failed to state a claim pursuant to Rule 12(b)(6), the Elliotts have satisfied the heightened pleading requirements of Rule 9(b). Plaintiffs have stated with particularity the time, place, and contents of the false representations, as well as the identity of the persons making the misrepresentation and what the Defendant obtained thereby. *In re Mut. Funds Inv. Litig.*, 566 F.3d at 120. On the face of the Complaint, Plaintiffs have set forth that their fraud claim is based on four specific representations in Defendant's--specifically two of its managing directors, Messrs. Dolder and Kroin--June 30, 2010 presentation to Mr. Elliott, resulting in the Plaintiffs' execution of the Agreement. The Court "hesitate[s] to dismiss [the Complaint] under Rule 9(b)"

4 Defendant argues that Plaintiffs cannot avoid dismissal by introducing new facts in the Opposition. (Reply at 4-5). The Court notes that to the extent new facts were raised in the Opposition, the Court has not considered them here, as it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Rossman v. Lazarus*, No. 1:08cv316, 2008 WL 4181195, at *7 (E.D. Va. Sept. 3, 2008) (quoting *Katz v. Odin, Feldman &*

for failing to plead with particularity, because the Court is satisfied "(1) that [Defendant] has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [Plaintiffs have] substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

B. <u>Failure to State a Claim Under 12(b)(6)</u>

Under Virginia law, to state a claim for fraudulent inducement to contract, a plaintiff must plead "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party misled." *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148 (1994); *see also State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218 (2005).[5] Great Point asserts that Plaintiffs cannot state a claim for fraud because the Elliotts cannot plead reasonable reliance and because the alleged misrepresentations are not actionable in fraud.

i. <u>Reasonable Reliance</u>

---

*Pittleman, P.C.*, 332 F.Supp.2d 909, 917 n.9 (E.D. Va. 2004)).

5 The elements of actual fraud and fraudulent inducement are effectively the same. "To state a cause of action for fraudulent inducement of contract under Virginia law, a plaintiff must allege that the defendant made "misrepresentations [that] were 'positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract.'" *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 452 (E.D. Va. 2009) (quoting *Lucas v. Thompson*, 61

Defendant first argues that, because Plaintiffs have not pled and cannot plead reasonable and justifiable reliance on Great Point’s alleged misrepresentations, this Court should dismiss the Elliotts’ Complaint. (D. Mem. at 6.)

It is well-settled under Virginia law that to succeed on a fraud claim a plaintiff’s reliance must be reasonable and justified. As the Fourth Circuit has stated, in Virginia “[i]t is not enough for a plaintiff in a fraud action to show that it acted to its detriment in response to the defendant's false representation . . . of a material fact. ‘In order to prove reliance, a plaintiff must demonstrate that its reliance upon the representation was reasonable and justified.’” *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 630 (4th Cir. 1999) (quoting *Meridian Title Ins. Co. v. Lilly Homes, Inc.*, 735 F. Supp. 182, 185 (E.D. Va. 1990)). “Failure to plead reasonable reliance is fatal to a common law fraud claim.” *Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 F. App’x 504, 506 (4th Cir. 2010). “While the majority of states require only justifiable reliance, Virginia is one of the minority of states that requires the higher standard of reasonable reliance to establish fraud.” *White v. Potocska*, 589 F. Supp. 2d 631, 650 n.18 (E.D. Va. 2008) (internal quotations and citations omitted).

On the face of their Complaint, Plaintiffs allege

---

Va. Cir. 44, 2003 WL 483831, at *3 (Va. Cir. Ct. 2003)).

reasonable reliance, stating that "in reliance on the [alleged] misrepresentations, [Plaintiffs] signed [Defendant's] proposed stock purchase agreement" and that Plaintiffs "reasonably relied on [Defendant's] statements [], because [Defendant] represented that [the statements] were based on extensive due diligence." (Compl. ¶¶ 8, 12, 17.) The Elliotts have alleged reasonable reliance because of Defendant's representation to them that it based the $4.00 per share offer on its own extensive due diligence. Great Point, however, argues that Plaintiffs cannot plead reasonable reliance, because Plaintiffs failed to conduct due diligence. What the Court must address, then, is whether the Elliotts are precluded, as a matter of law, from pleading fraud because their reasonable reliance is based solely on Defendant's representation of its extensive due diligence and not on Plaintiffs' own investigation.

In Virginia, the "touchstone of reasonableness is prudent investigation." *Hitachi*, 166 F.3d at 629. As this Court has stated, "[u]nder Virginia law, there may be circumstances where reliance cannot be reasonable in the absence of prudent investigation." *FS Photo, Inc. v. PictureVision, Inc.*, 61 F. Supp. 2d 473, 483 (E.D. Va. 1999). One settled instance in which reliance is unreasonable is where a plaintiff "makes a partial inquiry, with full opportunity of complete investigation, and elects to act upon the knowledge obtained from the partial

inquiry." *Hitachi*, 166 F.3d at 629. Another is where a party specifically disclaims reliance on its counterparty's representation it asserts as fraudulent. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 830 (4th Cir. 1999). Another is where a party had information that would excite the suspicions of a reasonably prudent person. *See White*, 589 F. Supp. 2d at 652. Yet another is where one relies upon an oral statement that is contrary to a written statement in his possession. *See Foremost Guaranty Corp. v. Meritor Savings Bank*, 910 F.2d 118, 126 (4th Cir. 1990). Here, however, the Complaint contains no allegation of any investigation by Plaintiffs or any information that would excite suspicions, nor does the Agreement contain a specific disclaimer of reliance or any written statement contrary to the alleged oral representations. Thus, the issue is whether there is a duty to investigate in the first instance.

It is clear that in "in circumstances where a prudent buyer *would have* conducted an investigation and, thereby, discovered the seller's misstatement, a buyer who fails to make such an investigation may not assert fraud based on the factual misrepresentation." *Hoover Universal, Inc. v. Brockway Imco, Inc.*, 809 F.2d 1039, 1044 (4th Cir. 1987) (emphasis added). In this case, Plaintiffs are sellers, but as the Supreme Court of Virginia has stated, "[w]e see no reason why the converse of *caveat emptor* should not also be applied to a seller who fails to

exercise ordinary care in discovering the value of property he sells." *Virginia Natural Gas Co., Inc. v. Hamilton*, 249 Va. 449, 457, 457 S.E.2d 17, 22 (1995). Equally applicable, then, to both buyers and sellers, is "[w]here ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them." *Id*. Moreover, as stated in a case cited by Great Point in its Memorandum in Support,

> if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

*Horner v. Ahern*, 207 Va. 860, 864, 153 S.E.2d 216, 219 (1967) (quoting *Costello v. Larsen*, 182 Va. 567, 571-72, 29 S.E.2d 856, 858 (1944)). Nonetheless, as a general rule in Virginia, one has a right to rely on a representation of a counter-party "'quoad the maker, and need make no further inquiry.'" *Cerriglio v. Pettit*, 113 Va. 533, 544, 75 S.E. 303, 308 (1912) (quoting *Lowe v. Trundle*, 78 Va. 65, 69 (1883)). "While the common law affords reasonable protection against fraud in dealing, it 'does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information.'" *Wells v. Wells*, 12 Va. App. 31, 35, 401 S.E.2d 891, 893 (Va. App. 1991) (quoting *Harris v. Dunham*, 203 Va. 760, 771, 127 S.E.2d 65, 72

(1962). Taken together, the upshot of these cases is that a buyer or seller must exercise ordinary care and prudence. Indolence and folly are not protected, and where a prudent person would have investigated, so too should all others.

Even the absence of ordinary care, however, is not an absolute bar to an allegation of fraud. “As a general rule, the burden is upon a [party] to discover defects. ‘[A] very important exception to that rule is that the seller must not say or do anything to throw the purchaser off his guard or to divert him from making the inquiries and examination which a prudent man ought to make.’” *Van Deusen*, 247 Va. at 329, 441 S.E.2d at 210 (quoting *Armentrout v. French*, 220 Va. 458, 466, 258 S.E.2d 519, 524 (1979)). “The cases in Virginia are clear [] that ‘one cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth.’” *Hitachi*, 166 F.3d at 629 (quoting *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 631, 331 S.E.2d 490, 492 (1985). “A buyer may therefore recover for fraud if the seller does or says anything to divert the buyer ‘from making the inquiries and examination which a prudent man ought to make.’” *Id*. (quoting *Horner*, 153 S.E.2d at 219). As the Fourth Circuit has stated, “[w]hen the one inducing the other to enter the contract throws the other off guard or diverts him

from making the reasonable inquiries which usually would be made, however, Virginia law will forgive an incomplete investigation." *Bank of Montreal*, 193 F.3d 818 at 828; *see also Horner*, 153 S.E.2d at 219 (holding that a "very important exception" to the rule that a party is "bound to discover the true condition for himself if he has information which would excite the suspicions of a reasonably prudent man" is that a party "must not say or do anything to throw the [other] off his guard or to divert him from making the inquiries and examination which a prudent man ought to make"). Moreover, "[g]iven that the Virginia courts have allowed the false representation to act as the 'diversion', *see Van Deusen v. Snead*, 247 Va. 324, 328-29, 441 S.E.2d 207, 210 (same acts of concealment serve as basis for both element of fraud and 'diversion' exception to real property caveat emptor doctrine), the Virginia courts have effectively eliminated the requirement that reliance be reasonable in some cases." *Bank of Montreal*, 193 F.3d at 828 n.4.

Here, Plaintiffs have not alleged any investigation on their part as to the value of the shares they agreed to sell to Defendant. They allege simply that their reliance was reasonable because of Defendant's representation of its extensive due diligence. While it may have been unwise to rely on Defendant's diligence, this Court, at this stage in the litigation and with the record undeveloped, cannot say that as a matter of law it was

unreasonable. That Plaintiffs did not conduct their own investigation is not an absolute bar to their fraud claim. It is plausible that their lack of investigation was not in itself unreasonable, and it is plausible that even then they may be excused from that duty. Assuming the veracity of Plaintiffs allegations and taking them in the context of the Complaint as a whole, the Complaint plausibly suggests an entitlement to relief.

Defendant makes much of Mr. Elliot's history as an officer and director of Mediatech and his "obvious and incontrovertible access to information concerning" the company as reasons Plaintiffs "cannot possibly plead reasonable [] reliance." (D. Mem. at 11.) By the time of Defendant's presentation, though, Mr. Elliott had apparently stepped down from his positions, so that he did not necessarily have any more access than any other large shareholder. Though a shareholder with holdings the size of Plaintiffs have access to corporate records and financial statements, they must first request access through the corporation. *See* Va. Code Ann. §§ 13.1-771, 774. Nothing in either the Complaint or Defendant's Memorandum shows that Mr. Elliott had any expertise in corporate finance or valuation; indeed, Mediatech's Annual reports to the Virginia State Corporation Commission, offered by and heavily relied upon by Defendant, list Mr. Elliott as "VP MKTG," which presumably means "vice president for marketing." As for Mr. Elliott's

personal guarantee in favor of Mediatech's primary lender, BB&T, neither the Complaint nor Defendant's Memorandum detail whether because of the guarantee Mr. Elliot had access to any particular information regarding BB&T's line of credit.

Although the Court recognizes that this may not be enough for Plaintiffs to *prove* reasonable reliance, the Court finds it is enough to establish that Mr. Elliott's status does not, in itself, preclude as a matter of law Plaintiffs from *pleading* reasonable reliance. At this stage, with the factual record undeveloped, the Court is unable to resolve this issue. Whether Plaintiffs' failure to investigate was unreasonable in these circumstances is a question of fact that cannot be resolved on a motion to dismiss. The Court, however, is satisfied that Plaintiffs' Complaint plausibly suggests an entitlement to relief.

#### ii. The Alleged Misrepresentations are Not Actionable

Defendant next argues that Plaintiffs' Complaint should be dismissed on the grounds that the alleged misrepresentations are not actionable in fraud. It is well-settled that to be actionable in fraud, an alleged misrepresentation "must be of an existing fact, and not the mere expression of an opinion." *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368, 585 S.E.2d 578, 582 (2003). Moreover, as a fraud claim "must relate to a present or a pre-existing fact, [it] cannot ordinarily be predicated on

unfulfilled promises or statements as to future events." *Enomoto*, 624 F. Supp. 2d at 454 (quoting *McMillion v. Dryvit Sys., Inc.*, 262 Va. 463, 471, 552 S.E.2d 364, 368 (2001). "It is well settled that . . . the mere expression of an opinion, however strong and positive the language may be," is not a statement of present fact. *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 293, 467 S.E.2d 778, 781 (1996).

Although the rule itself is clear, "[i]t is not always an easy matter to determine whether a given statement is one of fact or opinion." *Mortarino*, 251 Va. at 293, 467 S.E.2d at 781 (quoting *Garrett v. Finch*, 107 Va. 25, 28, 57 S.E. 604, 605 (1907)). "Whether a statement is a statement of fact or a statement of opinion is determined on a case-by-case basis, 'taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances.'" *Sales v. Kecoughtan Housing Co., Ltd.*, 279 Va. 475, 481 (2010) (quoting *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 562 (1956)). A matter "susceptible of exact knowledge when the statement is made, is usually considered as a matter of fact." *Poe v. Voss*, 196 Va. 821, 825, 86 S.E.2d 47, 49 (1955). With this in mind, the Court will address each of Defendant's arguments.

With respect to the first alleged misrepresentation, that "Mediatech has experienced no EBITDA growth in 2010,"

(Compl. ¶ 9), Defendant argues that in context this statement is little more than its opinion of the company's financial performance and, thus, not actionable. (D. Mem. at 13.) EBITDA--earnings before interest, taxes, depreciation, and amortization--is an accounting measure of financial performance. Whether Meditech experienced EBITDA growth in 2010 is an "opinion" only insofar as any measure of financial performance is an "opinion." Either earnings before interest, taxes, depreciation, and amortization have increased from one point in time to another or they have not. While different accountants may come to different calculations of EBITDA or, for instance, gross income, the very purpose of a corporation's financial statements is to objectively quantify its performance. As such, and without any additional circumstances surrounding it, Defendant's statement is actionable in fraud.

As to the second alleged misrepresentation, that "Mediatech is fully drawn on its credit facilities," (Compl. ¶ 9), Defendant argues that this was little more than Defendant's opinion. (D. Mem. at 13.) This statement, however, is susceptible of exact knowledge--either the company's credit facilities were fully drawn or not. That Plaintiffs may have been able to verify or refute Defendant's claim is immaterial for purposes of this inquiry. Mediatech had a certain amount of credit on which it could draw, and Defendant's statement asserted

that all of it had been drawn. With nothing more surrounding this statement, it is actionable in fraud.

As to the third alleged misrepresentation, that "Mediatech's BB&T revolving line of credit is due in full, and BB&T is prepared to foreclose," (Compl. ¶ 9), Defendant argues the statement was a prediction about a future event, merely a prediction about a third party's possible future actions. (D. Mem. at 12.) Whether BB&T was prepared to foreclose, however, is a present fact. Either it was or was not prepared to do so. Whether it executed on that preparation and in fact *would* foreclose would have been a statement as to a future event, but that it *is* "prepared to foreclose" is a statement about a present fact. Again, whether Plaintiffs were in a position to verify the veracity of the factual statement is irrelevant for this inquiry. This statement, without any additional facts and circumstances at this stage to indicate otherwise, is actionable in fraud.

With respect to the fourth alleged misrepresentation, that "Mediatech's payables have been stretched beyond reasonable limits," (Compl. ¶ 9), Defendant argues it was a mere expression of opinion. (D. Mem. at 12.) According to Defendant, the term "reasonable" is a "subjective term that depends on the viewpoint of the speaker" and "cannot be objectively verified as true or false." *Id*. "Reasonableness," as allegedly stated here, however, is *objective*. Whether the company's payables were

stretched beyond reasonable limits is an objective standard, *i.e.*, it can be measured against industry standards or other factors beyond the opinion of the speaker. While there may be a range in which parties would disagree on whether the payables were stretched beyond reasonable limits, there are certainly ranges in which parties would not--thus, depending on the facts underlying the representation, it could be susceptible of exact knowledge. As such, at this threshold stage, the statement is actionable.

For these reasons, the Court will deny Defendant’s Motion to Dismiss on the basis that the alleged misrepresentations are not actionable in fraud.

iii. Plaintiffs Plead Damages

Defendant next argues that the Court should dismiss Plaintiffs’ claim for damages, as Plaintiffs have not yet tendered their shares and, thus, are in the identical position they occupied prior to executing the Agreement. (D. Mem. at 14.) Accepting Plaintiffs allegations as true, however, they have suffered damages. The parties agree that they have formed a legally binding agreement to transfer the shares at a price below their alleged value. As of now, Plaintiffs are bound by that agreement.

It is well-settled that fraud can be grounds for either rescission or damages, *Robberecht v. Maitland*, 220 Va. 109, 111-

12, 255 S.E.2d 682, 683 (1979) (citing *Jordan v. Walker*, 115 Va. 109, 117, 78 S.E. 643, 645 (1913)), and that punitive damages are available in certain, though rare, instances, *see Jordan v. Suave*, 219 Va. 448, 453, 247 S.E.2d 739, 742 (1978). As such, at this stage in the litigation, the Court will not foreclose any remedy. Should the Court come to consideration of the proper remedy, this issue will be addressed then.

For these reasons, the Court will deny Defendant's Motion to Dismiss Plaintiffs' claim for damages.

## IV. Conclusion

For these reasons, the Court will deny Defendant's Motion to Dismiss Plaintiffs' Complaint.

An appropriate Order will issue.

/s/

James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE

January 5, 2011
Alexandria, Virginia