IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JOHN ELLIOTT and          )
LAURA ELLIOTT,            )
                         )
     Plaintiffs,          )
                         )
          v.              )   1:10cv1019 (JCC/JFA)
                         )   1:10cv1047 (JCC/JFA)
GREAT POINT PARTNERS, LLC, )
                         )
     Defendant.           )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Great Point
Partners, LLC's ("Great Point"), Motion for Partial Summary
Judgment (the "Motion"). [Dkt. 17.]  For the following reasons,
the Court will grant the Motion.

**I.  Background**

This matter arises out of a July 15, 2010 stock
purchase agreement (the "Agreement") entered into by and between
John and Laura Elliott (the "Elliotts") and Great Point Partners,
LLC ("Great Point"), pursuant to which Mr. Elliott agreed, among
others things, to sell his shares in Mediatech, Inc.
("Mediatech") to Great Point.  Great Point alleges that Mr.
Elliott breached the Agreement and refused to sell his shares in
Mediatech.

1

A.   Background

John and Laura Elliott, husband and wife, collectively own approximately 37 percent of the common stock of Mediatech. (P. Mem.[1] ¶ 2.)  Mr. Elliott is one of the largest shareholders in Mediatech, owning 1,035,437.50 shares of its common stock. (P. Mem. ¶ 5.)  Mediatech is a privately-held company based in Manassas, Virginia, that manufactures and supplies cell-culture and molecular biotechnology reagents to biopharmaceutical, academic, and government research facilities.  (P. Mem. ¶ 3.) Great Point is an investment firm focusing on health-care related companies.  (P. Mem. ¶ 1.)

Mr. Elliott was one of the founders of Mediatech, and for many years was its Chief Operating Officer and a member of its board of directors.  (P. Mem. ¶¶ 4-6.)  Mrs. Elliott was Mediatech's customer support manager for 14 years, retiring in June of 2010.  (P. Mem. ¶ 7.)  Additionally, Mr. Elliot was a personal guarantor of $5,000,000.00 of Mediatech's credit facility with Branch Banking and Trust Company ("BB&T").  (P. Mem. ¶¶ 8, 15.)  Mr. Elliott's ownership in and positions with Mediatech provided him access, in certain circumstances, to Mediatech's financial records.  (P. Mem. ¶ 8.)

In April 2010, Great Point entered into a letter of intent (the "LOI") with Mediatech, pursuant to which Great Point

---

[1] Great Point's Memorandum in Support [Dkt. 18] of the Motion will be referred to as "P. Mem."

proposed to acquire a substantial interest in Mediatech (the "Proposed Transaction"). (P. Mem. ¶ 9.) The LOI valued Mediatech at $10.00 per share, subject to Great Point's confirmatory due diligence. (P. Mem. ¶ 10.) Mediatech's chief executive officer, Jim DeOlden signed the LOI along with Mr. Elliott. (P. Mem. ¶ 11.)

Following execution of the LOI, Great Point retained financial and legal professionals to conduct due diligence in connection with the Proposed Transaction. (P. Mem. ¶ 17.) The due diligence revealed a number of issues with Mediatech, leading Great Point to conclude that the $10.00 offer set forth in the LOI was too high. (P. Mem. ¶¶ 19-20.) On June 25, 2010, Great Point sent a letter to Mr. DeOlden and Mr. Elliott, stating that its due diligence showed that Mediatech's earnings before interest, taxes, depreciation, and amortization ("EBITDA") were "trending down" despite increased sales, that Mediatech was in violation of its covenants in the BB&T credit facility, and that Mediatech was suffering a "liquidity crisis"; Great Point proposed to revise the offer price to $4.00 per share as a result of these findings. (P. Mem. ¶¶ 21-23.) Mr. Elliot was concerned by the letter and contacted Mr. DeOlden; Mr. DeOlden advised the Elliotts that Great Point's assertions were untrue. (P. Mem. ¶ 24.)

After sending the June 25, 2010 letter, David Kroin, a

3

managing director of Great Point, spoke with Mr. Elliott about the revised offer and traveled to the Elliott's home in Virginia to discuss the transaction. (P. Mem. ¶ 25.) On June 30, 2010, Mr. Kroin and Adam Dolder, another of Great Point's managing directors, met with the Elliotts and made a presentation describing Great Point's valuation of Mediatech. (P. Mem. ¶ 26-27.) Charlie Shermer, a business advisor of the Elliotts, attended the Presentation. (P. Mem. ¶ 26.) After the presentation, Messrs. Kroin and Dolder presented provided the Elliotts with a draft stock purchase agreement, pursuant to which Great Point would, among other things, purchase Mr. Elliott's shares in Mediatech for $4.00 per share. (P. Mem. ¶ 28.)

During the negotiations, Great Point advised the Elliotts to review the proposed transaction with counsel. (P. Mem. ¶ 31.) The Elliotts sought the advice of an attorney, who requested certain changes and additions to the draft agreement. (P. Mem. ¶ 30.) After the changes were incorporated, the Elliotts executed the stock purchase agreement on July 15, 2010 (the "Agreement"). (P. Mem. ¶ 33.)

The Agreement provided, among other things, that Great Point would purchase Mr. Elliott's 1,053,437.50 shares of Mediatech's common stock for $4.00 per share. (P. Mem. ¶ 35.) Pursuant to the Agreement, Mr. Elliott agreed to demand that Mediatech call a special meeting of its shareholders. (P. Mem. ¶

4

40.)  Mr. Elliott also agreed to refrain from discussing the sale
of his shares with any other potential purchasers and agreed to
take all actions reasonably requested by Great Point.  (P. Mem. ¶
36.)

Before the Elliotts executed the Agreement, Great Point
explained that the purchase of Mr. Elliott's shares was part of a
broader plan to acquire control of the voting rights of a
majority of the common stock of Mediatech.  (P. Mem. ¶ 37.)  As
part of this plan, Great Point had entered into a stock purchase
agreement with another significant shareholder of Mediatech,
Baxter Healthcare Corporation ("Baxter") to purchase its shares
at $4.00 per share.  (P. Mem. ¶ 38.)  Mrs. Elliott requested to
see a copy of the Baxter purchase agreement, which Great Point
provided.  (P. Mem. ¶ 39.)  After executing the Baxter agreement,
Mediatech requested that Mr. Elliott send a demand to Mediatech
to call a special meeting of the shareholders, as required by the
Agreement.  (P. Mem. ¶ 40.)  Mr. Elliott did so.  (P. Mem. ¶ 43.)

After receiving Mr. Elliott's demand, Mr. DeOlden
contacted the Elliotts.  (P. Mem. ¶ 44.)  Mrs. Elliott told Mr.
DeOlden that the Elliotts had entered into the Agreement.  (P.
Mem. ¶ 45.)  Mr. DeOlden offered to have Mediatech purchase Mr.
Elliott's shares and stated that the Agreement was not a problem.
(P. Mem. ¶ 46.)  On August 24, 2010, Mr. Elliott entered into an
agreement with Mediatech pursuant to which Mediatech would

purchase his shares at $10.00 per share (the "August 24 Agreement"). (P. Mem. ¶ 47.)

On or about August 31, 2010, Great Point received a letter from Elliott's counsel stating that the Elliotts have a cause of action for fraudulent inducement of the Agreement, but in lieu of litigation they are "willing to settlement for a mutual walk-away," if Great Point will agree that the Agreement is "null and void." (Ex. D to Kroin Decl. [Dkt. 18-14].) Mr. Elliott subsequently withdrew his demand for the special meeting and refused to tender his shares to Mediatech. (P. Mem. ¶¶ 50, 52.)

B. Procedural Background

On September 10, 2010, Great Point filed a two-count complaint (the "Complaint") in this Court seeking specific performance and alleging breach of contract. [Dkt. 1.] The matter was given civil docket number 1:10cv1019. Prior to Great Point's filing, on or about September 1, 2010, the Elliotts filed a complaint in the Circuit Court of Loudon County, Virginia, alleging fraudulent inducement to contract, *John Elliot and Laura Elliott v. Great Point Partners, LLC*, Case No. CL 63454. [Dkt. 1-4.] On September 20, 2010, Great Point removed that case to this Court, and the matter was given civil docket number 1:10cv1047.

On October 26, 2010, this Court, pursuant to Federal

Rule of Civil Procedure 42(a), consolidated these two cases under the instant matter, civil docket number 1:10cv1019.  [Dkt. 6.] On October 26, 2010, Great Point filed a Motion to Dismiss the Elliott's Complaint in 1:10cv1047. [2]  [Dkt. 7.]

On December 3, 2010, Great Point filed a Motion for Partial Summary Judgment (the "Motion") in the 1:10cv1019 action. [Dkt. 17.]  Mr. Elliott filed his Memorandum of Law in Opposition to Great Point's Motion on December 14, 2010 (the "Opposition"). [Dkt. 24.]  Great Point filed a Reply in Further Support of its Motion (the "Reply") on December 16, 2010. [Dkt. 25.] Great Point's Motion is currently before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could

---

[2] As stated in Open Court at oral argument regarding the Motion and Great Point's Motion to Dismiss, the Court will construe the Elliott's affirmative case, 1:10cv1047, as the lead case in this consolidated action, with Great Point's affirmative case against John Elliott, 1:10cv1019, as a counterclaim.

return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III.  Analysis

Before considering Great Point's argument in favor of summary judgment, the Court will address Mr. Elliott's Opposition.  The Opposition does not address any of Great Point's facts or arguments presented in its memorandum in support of its Motion.  Instead, Mr. Elliott makes the conclusory statement that the Motion "should be denied and this matter should proceed to trial," and "alternatively, the Elliotts would request that the court grant them leave to amend their Answer" under Rule 15(a)(2).  (Opp.[3] at 5.)

The sole argument in support of denial is procedural. Mr. Elliott argues that Great Point has "previously filed [a] Motion to Dismiss" pursuant to Rule 12(b)(6) that "included significant documentation that brought into question 'matters outside the pleadings.'"  (Opp. at 4.)  Because of this "significant documentation," Mr. Elliott argues that pursuant to Rule 12(d), this Court must treat the Motion to Dismiss as a motion for summary judgment.  *Id*.  Therefore, the Motion should be denied, as "under [Local Rule 56(c)[4]] 'a party shall not file separate motions for summary judgment addressing separate grounds for summary judgment.'"  *Id*. (quoting Local Rule 56(c)).  This argument is unavailing.

Ordinarily a court may not consider any documents that are outside of the complaint or not expressly incorporated

---

[3] Mr. Elliott's Opposition [Dkt. 24] will be referred to as "Opp."
[4] Mr. Elliott cites to Federal Rule 56(c) for this proposition; however, the

therein, unless the motion is converted into one for summary judgment. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x. 395, 396-97 (4th Cir. 2006). There are, however, certain exceptions to the general rule. Relevant here, a court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed," without converting the motion into a motion for summary judgment. *Id*. The "significant documentation" referred to by Mr. Elliott is exactly the sort of extraneous material a court may consider without converting a motion to one for summary judgment-- documents central to the Elliott's claim in action 1:10cv1047, *i.e.*, the Agreement, and official public records, *i.e.* Virginia State Corporation filings, the authenticity of which was not disputed by Mr. Elliott. Accordingly, the Court did not convert the motion to dismiss in 1:10cv1047 to one for summary judgment and Local Rule 56(c) does not apply.

Mr. Elliott's Opposition also fails to respond properly to any facts set forth as undisputed by Great Point in its Motion. Federal Rule of Civil Procedure 56(c) provides that

> [a] party asserting that a fact . . . is genuinely
> disputed must support the assertion by: (A) citing
> to particular parts of materials in the record,
> including depositions, documents, electronically
> stored information, affidavits or declarations,
> stipulations (including those made for purposes of

---

proper cite is to Local Rule 56(c).

10

the motion only), admissions, interrogatory
answers, or other materials; or (B) showing that
the materials cited do not establish the absence
or presence of a genuine dispute, or that an
adverse party cannot produce admissible evidence
to support the fact.

Mr. Elliott's Opposition merely sets forth a litany of facts,
without even asserting that any facts are in dispute.  Mr.
Elliott does not direct the facts he does set forth in response
to any of Great Point's arguments or facts, nor does he support
them with any references or citations to any materials as
required by Rule 56(c).  For situations such as this one, Rule
56(e), as amended effective December 1, 2010, states that when a
non-movant fails to properly support or address a fact as
provided in Rule 56(c), a court may "(1) give an opportunity to
properly support or address the fact; (2) consider the fact
undisputed for purposes of the motion; (3) grant summary judgment
if the motion and supporting materials--including the facts
considered undisputed--show that the movant is entitled to it; or
(4) issue any other appropriate order." *See also Daugherty v.
Pulte Homes of Greater Kansas City*, Civ. Action No. 09-2523-KHV,
2010 WL 4963041, at *2 (D. Kan. Dec. 1, 2010).  The Court will
consider the facts not disputed by Mr. Elliott as undisputed for
purposes of the Motion.  Fed. R. Civ. P. 56(e)(2).

A.   Governing Law

As this case arise from an alleged breach of contract,
the Court must determine what law governs its terms.  Virginia

11

choice of law principles with respect to contract are well-settled.  A federal court sitting in diversity must apply the substantive law of the forum state, including its choice of law rules.  *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).  Here, the Agreement provides that is "shall be governed by, and construed in accordance with, the laws of the State of New York."  (Ex. B to Kroin Decl. [Dkt. 18-12] at 3.) Accordingly, this Court will apply the substantive law of the New York, as "[t]he law of Virginia favors contractual choice of law provisions, giving them full effect except in unusual circumstances."  *Id.*

B.   Breach of Contract

Great Point's argument in support of the Motion is two-fold.  First, because Mr. Elliott breached the Agreement by either anticipatorily repudiating or breaching it, there is no genuine issue of material fact that he is liable for breach of contract under New York law.  Second, to the extent Mr. Elliott raises the affirmative defense of fraudulent inducement (though it is not clear that he does), he expressly disclaimed reliance or, in the alternative, could not reasonably rely as a matter of law.  The Court will address these arguments in turn.

Under New York law, the elements of a cause of action for breach of contract are "(1) [the existence of] a contract; (2) performance of the contract by one party; (3) breach by the

12

other party; and (4) damages [resulting from the breach]."
*Rafter v. Bank of America*, No. 04 Civ. 3341, 2009 WL 691929, at
*11 (S.D.N.Y. Mar. 12, 2009) (quoting *Terwilliger v. Terwilliger*,
206 F.3d 240, 246 (2d Cir. 2000)).

### i.    Existence of a Contract

The parties do not dispute the existence of a valid and
enforceable contract.  Mr. Elliott acknowledges executing the
Agreement and does not dispute that he entered into a valid and
enforceable contract.  Accordingly, there is no genuine issue of
material fact that the Agreement existed.

### ii.    Performance by Great Point

Great Point does not allege that it tendered
performance pursuant to the Agreement.  Instead, Great Point
argues that there is no genuine issue of material fact that its
performance was excused by the Elliotts' anticipatory breach.
(P. Mem. at 14.)  The Court, then, must address whether Great
Point's performance is excused.

An anticipatory breach of contract by a defendant
excuses the plaintiff from tendering performance.  *Dixon v.
Malouf*, 894 N.Y.S.2d 127, 128 (N.Y. App. Div. 2010) (citation
omitted).  Under New York law, a party anticipatorily braches a
contract when it performs "a voluntary affirmative act which
renders the obligor unable or apparently unable to perform
without such a breach."  *Merrill Lynch Intern. v. XL Capital*

13

*Assur. Inc.*, 564 F. Supp. 2d 298, 303 (S.D.N.Y. 2008) (citing *Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 747 N.Y.S.2d 468, 474-75 (N.Y. App. Div. 2002) *leave to appeal denied* 793 N.E.2d 411 (N.Y. 2003)).  Such a voluntary act "includes situations in which the obligor transfers or contracts to transfer the specific property that is the subject of the earlier contract."  *In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 525 (Bankr. S.D.N.Y. 2005) (citing *James v. Burchell*, 82 N.Y. 108, 114 (1880) (seller repudiated contract to sell real property by conveying property to third party); Restatement (Second) of Contracts § 250, illus. 5 (2010) (seller repudiated contract to sell property by entering into a subsequent contract to sell the same property to a third party)); *see also Computer Possibilities Unlimited, Inc.*, 747 N.Y.S.2d at 476 (discussing Restatement (Second) of Contracts § 250, illus. 5 (2010)).

Here, it is undisputed that Mr. Elliott entered into an agreement with Mediatech on August 24, 2010, that provided for the sale of his shares in the company.  It is likewise undisputed that at the time Mr. Elliott entered into the August 24 Agreement, he was obligated by the Agreement to sell his shares to Great Point.  Thus, when Mr. Elliott entered into the August 24 Agreement obligating him to sell his shares to a third-party, Mediatech, he committed, as a matter of law, anticipatory breach of his agreement with Great Point to sell those same shares.

14

Accordingly, Great Point is excused from tendering performance in order to satisfy the elements of breach of contract.

Great Point argues that Mr. Elliott anticipatorily repudiated the Agreement in the August 31, 2010 letter.  That letter, sent by Great Point's counsel the day before the Elliotts filed suit in Virginia state court, is marked "inadmissible settlement communication."  (Ex. D to Kroin Decl. [Dkt. 18-14]) (emphasis omitted).  Though Mr. Elliott did not object to the use of this letter, the Court notes that it may not be admissible as evidence to support the Motion.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence."); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

Federal Rule of Evidence 408 excludes from evidence all statements made in the course of settlement negotiations when offered to prove liability for a disputed claim.  *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988); Fed. R. Evid. 408.  When facing an issue of whether to admit or exclude evidence under Rule 408, a court must decide whether the "statements or conduct were intended to be part of the negotiations for compromise."  *Id.* (internal citation and quotation marks omitted).  Formal litigation is not required, but

15

a dispute must exist.  *See Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 528 (3d Cir. 1995) ("dispute" includes both litigation and less formal stages of dispute); *see also* 2 McCormick On Evid. § 266 (6th ed.).

In the present case, the August 31, 2010 letter states that the Elliotts have a cause of action for fraudulent inducement, but in lieu of litigation they are "willing to settlement for a mutual walk-away" if Great Point will agree that the Agreement is "null and void." (Ex. D to Kroin Decl. [Dkt. 18-14].)  This letter notified Great Point of a dispute, and plainly makes an offer of settlement.  The letter is offered to prove that the Elliotts committed an anticipatory breach by repudiated the Agreement, thereby excusing Great Point from tendering performance.  As this is a breach of contract action, offering the August 31, 2010 letter for this purpose goes directly toward liability for the disputed claim.  While Rule 408 does allow admission for other purposes, for example proving a witness's bias or prejudice or negating a contention of undue delay, the Court does not see any possible relevant use for the August 31, 2010 letter other than proving the Elliotts committed an anticipatory breach, nor has Great Point presented any other use.  Accordingly, the Court will not consider the letter as evidence in support of the Motion.

      a.   <u>Ready, Willing, and Able to Perform</u>

An anticipatory breach by a defendant only excuses performance if the plaintiff establishes that he or she was ready, willing, and able to perform. *Dixon*, 894 N.Y.S.2d at 128. Great Point asserts that it was at all times ready, willing, and able to perform its obligations under the Agreement. (Kroin Decl. ¶ 35.)  It had the necessary funds to tender performance, and had already negotiated for the release of Mr. Elliott's personal guarantee of the BB&T credit facility, as required pursuant to the Agreement. *Id*.  No reasonable trier of fact could find for Mr. Elliott with respect to this element of Great Point's claim.

### iii.    Breach by Mr. Elliott

For the same reasons set forth above with respect to anticipatory breach, Mr. Elliott breached the Agreement when the Elliotts entered into the August 24 Agreement to sell their shares to Mediatech.  Accordingly, no reasonable juror could find for Mr. Elliott with respect to this element of Great Point's claim.

### iv.    Damages to Resulting from the Breach

The parties do not dispute that Great Point has suffered damages as a result of Mr. Elliott's breach.  "[I]t is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of loss cannot be proved with sufficient certainty, the injured party is entitled to

17

recover as nominal damages a small sum fixed without regard to the amount of the loss, if any." *Hirsch Elec. Co. v. Cmty. Servs., Inc.*, 145 A.D.2d 603, 605, 536 N.Y.S.2d 141, 143 (2d Dep't 1988); *see also Cary Oil Co., Inc. v. MG Ref. and Mktg., Inc.*, 90 F. Supp. 2d 401, 408 (S.D.N.Y. 2000) ("As a general rule, every breach of contract gives rise to a claim for damages."). That Mr. Elliott breached the Agreement is sufficient to prove damages for the purpose of proving, as a matter of law, liability for breach of contract. Great Point does not move for summary judgment with respect to the measure or type of damages, and accordingly the Court will not delve into that issue. Because Mr. Elliott breached the Agreement, however, no reasonable juror could find, for purposes of proving the damages element of its breach of contract action, that Great Point was not damaged as a result.

* * *

For the reasons set forth above, taking the record in the light most favorable to Mr. Elliott, no reasonable trier of fact could find for Mr. Elliott with respect to whether he breached the Agreement.

### C. Can Mr. Elliott Avoid Liability for Breach of Contract by Alleging Fraud

In his Opposiiton, Mr. Elliott merely reiterates the alleged misrepresentations set forth in the Elliotts' complaint in matter 1:10cv1047 and states that "as a result of the . . .

18

alleged fraudulent statements the Elliotts executed a stock purchase agreement on July 15, 2010." (Opp. at 4.) This Court, then, must address whether Mr. Elliott's affirmative case for fraudulent inducement defeats Great Point's Motion.

As an initial matter, the Court is not swayed by Great Point's argument that because Mr. Elliott did not assert an affirmative defense of fraud in his answer to Great Point's Complaint [1:10cv1047, Dkt. 17] he has waived that defense. Although it is the general rule that a party's failure to raise an affirmative defense in the appropriate pleading results in a waiver of that defense, *see* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1278 (2010), it is well-settled that in the Fourth Circuit, to enforce a waiver the opposing party must show that such failure to plead an affirmative defense will result in prejudice or unfair surprise. *See RCSH Operations, L.L.C. v. Third Crystal Park Assoc. L.P.*, 115 F. App'x 621, 630 (4th Cir. 2004). Here, Great Point is neither prejudiced nor surprised, as it has been put on notice of an affirmative defense of fraudulent inducement by Mr. Elliott's affirmative case in the consolidated matter 1:10cv1047.

Under Virginia law, to prove fraudulent inducement to contract, a party must show "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6)

19

resulting damage to the party misled." *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148 (1994); *see also State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218 (2005).  Great Point asserts that Mr. Elliott's affirmative defense of fraud fails for two reasons, because (1) he has disclaimed reliance on the alleged misrepresentations and (2) even if he relied, he cannot, as a matter of law, prove reasonable reliance.  (P. Mem. at 18.)  Because the Court finds that Mr. Elliott disclaimed reliance, it will address only that argument.

With respect to disclaiming reliance, Mr. Elliott conceded in his deposition that when he executed the Agreement, he was not relying on any advice or statement of any third party. (J. Elliott Dep. Tr. 41:19-22, at Ex. C to Chase Decl. [Dkt. 18-4] at 8 ("Q: We agree that when you signed [the Agreement], you weren't relying on any advice or statement by anybody else, correct?  A: I would say that is fair.").)  A party asserting fraud "must clearly show that he has relied upon the acts and statements of the other." *Harris v. Dunham*, 203 Va. 760, 767, 127 S.E.2d 65, 70 (1962).  Mr. Elliott conceded that he did not rely on Great Point's statements, and, significantly, Mr. Elliott did not dispute this fact in his Opposition or at oral argument

with respect to the Motion.[5]  Accordingly, Mr. Elliott's affirmative case for fraudulent inducement does not defeat Great Point's Motion.

## IV.   Conclusion

For these reasons, the Court will grant Great Point's Motion for Partial Summary Judgment.

An appropriate Order will issue.


|                        | /s/                                    |
| ---------------------- | -------------------------------------- |
| January 5, 2011        | James C. Cacheris                      |
| Alexandria, Virginia   | UNITED STATES DISTRICT COURT JUDGE     |

---

[5] At oral argument regarding the Motion, Mr. Elliott's counsel raised for the first time the issue of Mr. Elliott's capacity at the time of his deposition. The Court notes, however, that Mr. Elliott has not raised any capacity defense with respect to Great Point's breach of contract counterclaim and that no guardian has been appointed for Mr. Elliott, nor has any other evidence regarding capacity been presented.